UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT HASKELL, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) Civil No. 07-93-B-W | |
| | ) | |
| WARDEN, MAINE STATE PRISON, | ) | |
| | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

Robert Haskell and has filed a 28 U.S.C. § 2254 petition seeking federal habeas relief from his 1996 conviction in the State of Maine for gross sexual assault, criminal threatening with a dangerous weapon, and assault. Haskell was sentenced on April 18, 1997. After a preliminary review of the petition it appeared to me that Haskell's petition was time-barred under 28 U.S.C. § 2244(d)(1). Accordingly, I entered an order to supplement the record and an order for petitioner to show cause. With respect to the order to supplement, I asked the State of Maine to provide the court with information regarding any state court action in this case subsequent to January 18, 2001, if there has been any. With respect to the order to show cause, I directed that Haskell should furnish this court with supplemental materials in support of his claim that the § 2244(d)(1) one-year statute of limitation is inapplicable to his case.

*Discussion*

As relevant to Haskell's petition, 28 U.S.C. § 2244(d) provides:

**(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

>> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **....**
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

According to Haskell's 28 U.S.C. § 2254 petition, his judgment was affirmed on direct appeal to the Maine Law Court on April 2, 1998. (Docket No. 1 at 2.) He filed a petition for post-conviction review on August 18, 1998. (Docket No. 4 at 2.) After an evidentiary hearing, a decision on that petition was rendered on January 18, 2001, and entered on the docket on January 19, 2001. (Id. at 6, 8-13.) On February 16, 2001, counsel for Haskell filed a motion to extend time for filing a notice of appeal which was granted. (Id. at 14-15.)

On March 9, 2001, Haskell's counsel sent the following letter to the superior court:

> On March 1, 2001, I drove to Thomaston, Maine, and met with Mr. Haskell for one hour at the Maine State Prison. I read him completely the decision of Justice Studstrup and described the statutory bases for appeal. After careful thought and consultation with me in person, Mr. Haskell has elected not to pursue an appeal.

(Id. at 16.)

On March 12, 2001, Haskell wrote the following letter to the superior court:

> Having spoken with Mr. Robert Haskell concerning "Statutory Bases For Appeal" as Attorney Lynch spoke of in his March 9, 2001 letter, Mr. Haskell complain[]s that he simply d[oes] not understand the appeal process in the language Attorney Lynch has conveyed to him while at his March 01, 2001 Meeting at the Maine State Prison.
> In several conversation[]s with [M]r. Haskell, we talked about filing the Petition for Certiorari and in a conversation with Mr. [L]ynch [h]e indicated that [M]r. Haskell did have a few ground[]s for the appeal. I was surprised that Mr. Lynch was not going to file the appeal for [M]r. Haskell.
> Mr. Haskell will mo[]st certainly be fil[]ing an appeal as [M]r. [H]askell will file

2

a Writ Of H[]abeas Corpus Petition.

(Id. at 17.)  On May 18, 2001, Haskell wrote a lengthier letter captioned "APPEAL."  (Id. at 18.)  In this letter Haskell reiterates his version of his interactions with his attorney vis-à-vis the filing of an appeal.  (Id.) He indicates that he did not agree with his attorney's recommendation that he not pursue an appeal and notes that he did not receive a response from the superior court concerning the earlier letter he describes as a notice of appeal.  (Id.)   Accompanying this letter is a memo from a teacher at the Maine State Prison that advises the court that Haskell has been attending the adult basic education class at the prison since September 1999.  The teacher describes Haskell as a beginning reader who struggles with literacy even with assistance and indicates that his comprehension is minimal.  (Id. at 19.)

On May 24, 2001, an assistant clerk for the superior court sent a memo to Justice Studstrup regarding Haskell.  (Id. at 20.)  In this memo the clerk asks the Justice to review the letter dated May 18, 2001, (filed May, 23, 2001).  The clerk summarizes:

> Attorney Lynch filed a Motion to Extend Time in Which to File an Appeal and then advised this office that Mr. Haskell has elected not to pursue an appeal.  (corr in file)  Then we received a correspondence on 3-15-01 in which it was indicated that Mr. Haskell will most certainly be filing an appeal.  We never received any Notice of Appeal.  This most current correspondence seems to indicate that he thought that last filing was a Notice of Appeal, but I did not treat it as such.

(Id. at 20.)  Finally, there is a May 31, 2001, letter from the assistant clerk to Haskell which states:

> We are in receipt of your correspondence dated May 18, 2001 with regard to an appeal on your Petition for Post Conviction Review.  Please be advised that the time period for filing an appeal on this matter has gone by.  Attorney Lynch did file a motion to Extend Time for Filing an Appeal.  This motion was granted and time to file an appeal was extended to March 9, 2001.  This office did not receive a Notice of Appeal on this matter.

(Id. at 21.)

In his response to the order to show cause Haskell states as follows. On March 1, 2001, he met with his attorney to discuss any further grounds for an appeal. (Docket No. 3 at 1.) Then he received his attorney's letter indicating that Haskell did not want to appeal. (Id.) On May 18, 2001, he asked an inmate to write the May 18, 2001, letter filed with the court, a letter that he believed made it quite clear that he did want to appeal the post-conviction decision and that he had an appeal prepared. (Id. at 2.) He never received a response from the court although he 'essentially' had filed the petition within the one year provided by statute. (Id.) It appears that Haskell maintains that the appeal was filed with the Maine Law Court and that his May 18, 2001, letter indicates this (although I do not read the letter as indicating this). Haskell further maintains that on May 18, 2001, he had a motion for appointment of counsel prepared and sent. (Id.)

With respect to his argument Haskell opines:

> Mr. Haskell argues here that the one year period of limitation d[oes] not apply to him because 28 U.S.C. § 2244(d)(1)(2) applies to his situation as there is newly discovered evidence in which was not available to him because of his attorney[']s failure to have the medical portion of his case examined by an independent doctor which would have rev[ea]led that on June 9, 1996, 10-year-old Sheri Howes was brought to the emergency department for evaluation after an alleged sexual assault. The alleged victim was examined by Dr. Lawrence Oliver, M.D. On the pelvic examination Dr. Oliver introduced a Speculum examination. If Mr. Haskell had had the benefit of a doctor he would have testified to the danger of a speculum device being used even where this young lady was alleged to have had no history of sexual activity. The speculum device, absent no bleeding on examination prior to the speculum device, ruptured her hymen and caused an injury to the external genitalia as noted by Dr. [L]awrence Ricci. Mr. Haskell could have had the doctor testify that because the speculum device was inserted with out any bleeding was indicative that there was no hymen and was ruptured prior to this alleged sexual assault raising the alarm of an alternative suspect and even refuting the naïve mind of Sheri Howes on sexual issues.
> Because the petitioner was left without any possible means to refute the medical evidence against him naturally the testimony of the doctors presented several problems

4

> for Mr. Haskell and his attorney because neither of them, especially Mr. Haskell, had
> the benefit of the intellectual understanding of the complex medical terminology
> presented by Dr. Ricci. This left Mr. Haskell[']s case vulnerable due to his intellectual
> limitations.

(Id. at 2-3.)

For its part the State argues that Haskell's 28 U.S.C. § 2254 petition is untimely:

> The materials submitted by Mr. Haskell and by the State above clearly reflect
> that, while there may have been some confusion regarding the status of Mr. Haskell's
> desire to appeal his adverse January 2001 state postconviction decision from January
> 2001 to May 2001, no later than May 31, 2001 Mr. Haskell was put on notice by the
> Maine Superior Court that there was no appeal of that decision actually pending in the
> Maine Courts. Despite that notice, Mr. Haskell did nothing for over six years to
> attempt to move an appeal forward.
> Summary dismissal of the petition on statute of limitations grounds is clearly
> warranted.

(Docket No. 4 at 1.)

It appears that when Haskell refers to 28 U.S.C. § 2244(d)(1)(2) he means to cite to § 2244(d)(1)(D) which provides that the limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. § 2244(d)(1)(D).

The problem for Haskell is that the attachments to his response to the order to show cause make it clear that the worth of the exculpatory evidence concerning the medical examination by Doctor Oliver was fully explored during the post-conviction proceedings. (See Docket No. 3-8; see also Docket No. 3-6.)[1] Haskell's post-conviction attorney ably questioned Haskell's trial counsel in a September 28, 2000, deposition in that proceeding. Trial counsel conceded that he did not call as a

---

1  Haskell also attaches two pages from the transcript apparently of his post-conviction hearing in which an unidentified doctor is testifying about his qualifications as a specialist in child abuse evaluation. (Docket No. 3-7 at 1-2.) Whatever Haskell hopes to achieve through this submission, it too was evidence that Haskell had at his

witness the doctor who examined the victim of the sexual assault within the twenty-four hour period after the assault or enter his report into evidence.  He did not call the emergency room doctor or attempt to get his report entered into evidence even though this doctor's report arguably could have undercut the testimony of the state's medical expert who examined the victim days later.

The dispute concerning the importance of this evidence was in front of the post-conviction justice when he made his final determination.  The post-conviction court ruled:

> The victim of the gross sexual assault for which Haskell was convicted was taken to the emergency room of the Central Maine Medical Center on June 9, 1996. The chief complaint, as listed on the initial assessment form, was "apparent sexual assault." The standard protocol for suspected sexual assault was followed, including detailed questioning and a physical examination conducted by Dr. Oliver.  The doctor's examination indicated no trauma to the external genitalia, a superficial laceration near the vaginal opening but no tears inside the vagina, and other findings.  Based on these findings and the victim's statement, Dr. Oliver's diagnosis was one of sexual assault. The victim was subsequently examined by Dr Ricci, a specialist in child sexual assaults. A comparison of the reports from Dr. Oliver and Dr. Ricci revealed some inconsistencies.  Haskell's trial attorney was aware of these inconsistencies and had identified Dr. Oliver as a potential witness.  At trial, counsel questioned Dr. Ricci about these inconsistencies on cross examination, but elected not to call Dr. Oliver as a defense witness.  Trial counsel explained this decision during his deposition as follows:
>> [B]ased on what I knew at the time in terms of the report and based on what I heard Ritchie [sic] testified to and based on the inconsistencies that had been elicited through Ritchie either on direct or on cross, my biggest concern in putting someone on the stand and having all of the inconsistencies – in other words, having the witness hurt you more than he helps.  In other words, the jury had heard about inconsistency.  My concern would be putting a witness on that further buries the client.[]
>
> Deposition at p. 30, line 15.
>
> Haskell's trial attorney had been in practice for several years and had the experience of several felony jury trials, including some for sexual assaults.  The attorney's decision to call the emergency room doctor as a witness, particularly where that witness's testimony would likely include the doctor's diagnosis that a sexual assault had occurred thereby bolstering the State's case, was clearly within the range of legitimate tactical decisions which would legitimately be made by an ordinary fallible trial

---

disposal as of his post-conviction proceedings.

>   attorney. Nor is there any indication that the decision not to call the emergency room
>   doctor would have likely deprived Haskell of any substantial ground of defense. In
>   summary, the performance of Haskell's trial attorney did not deprive him of effective
>   assistance of counsel.

(Docket No. 4 at 10-11)(footnote omitted).

Haskell does now add the speculation that he could have had a doctor testify concerning the possible role the speculum examination might have played in the analysis of the physical evidence but there is new "factual predicate" to this speculation. See 28 U.S.C. § 2244(d)(1)(D). Certainly by the time of the post-conviction proceedings Haskell was apprised of the available medical evidence in his case and having done nothing to pursue some sort of further factual evidence in the interim demonstrates a distinct want of § 2244(d)(1)(D) "due diligence." See Wood v. Spencer, 487 F.3d 1, 4 (1st Cir. 2007) ("In order to qualify for this exception, a habeas petitioner must show that, exercising due diligence, he could not have learned of the evidence in question at a substantially earlier date."); Libby v. Magnusson, 177 F.3d 43, 50 (1st Cir. 1999) (concluding that a petitioner had not exercised due diligence for purposes of following under a similar factual predicate/due diligence provision for second and successive petitions when he knew of the allegedly new alibi witness four years prior to filing his first § 2254 petition). Accordingly, Haskell's § 2244(d)(1)(A) year having long run, his § 2254 petition is time-barred.[2]

## *Conclusion*

Haskell's petition is untimely under 28 U.S.C. § 2244(d), and I recommend that the Court **DENY** Haskell 28 U.S.C. § 2254 relief.

---

[2] Had Haskell complied with the 28 U.S.C. § 2244(d)(1) statute of limitation there may have been concerns about his 28 U.S.C. § 2254(b)(1)(A) exhaustion or procedural default, see Clements v. Maloney, 485 F.3d 158 (1st Cir. 2007), and whether there was independent and adequate state law grounds for the State denying further post-

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 14, 2007.                                             /s/Margaret J. Kravchuk
                                                             U.S. Magistrate Judge

---

conviction review, see Hartman v. Bagley, __ F.3d __, __, 2007 WL 1976005, *9 (6th Cir. July 10, 2007).